Curt Roy Hineline, OSB No. 913153
Alexander Vitruk, admitted *pro hac vice*
Baker & Hostetler LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
(206) 332-1101
chineline@bakerlaw.com
avitruk@bakerlaw.com

Teresa C. Chow, *pro hac vice forthcoming*
Dyanne J. Cho, *pro hac vice forthcoming*
Baker & Hostetler LLP
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4508
(310) 820-8800
tchow@bakerlaw.com
dcho@bakerlaw.com

*Attorneys for Defendant Legacy Health*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON – PORTLAND DIVISION

| | |
|---|---|
| K.L., an individual; on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>LEGACY HEALTH, an Oregon nonprofit healthcare provider,<br><br>        Defendant. | CASE NO. 3:23-cv-01886-SI<br><br>Defendant Legacy Health's MOTION TO DISMISS Pursuant to Fed. R. Civ. P. 12(b)(6)<br><br>Request for Oral Argument |

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................8

II.  BACKGROUND ...................................................................................................9

III.  LEGAL STANDARD...........................................................................................11

VI.  ARGUMENTS AND AUTHORITIES................................................................11

    A.  Plaintiff Has Failed to State a Breach of Confidence Claim (Count I)..................11

    B.  Plaintiff Fails to State a Claim Against Legacy Health for Violation of the
        ECPA (Count II). ..................................................................................................16

        a.  *Plaintiff Fails to Allege Any Unlawful Interception* ..................................16

        b.  *Plaintiff Fails to Allege any Plausible Interception of "Contents"*...........18

    C.  Plaintiff Has Failed to State an Invasion of Privacy Claim for Intrusion Upon
        Seclusion (Count III)............................................................................................20

    D.  Plaintiff Fails to State a Breach of Implied Contract Claim (Count IV). ..............22

    E.  Plaintiff Fails to State an Unjust Enrichment Claim (Count V). ...........................25

    F.  Plaintiff Fails to State a Negligence Claim (Count VI). .......................................27

V.  CONCLUSION....................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Novant Health, Inc.*,
 2023 WL 5486240 (M.D. N.C. Aug. 24, 2023).....................................................................17

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...................................................................................................11, 20

*B.K. v. Eisenhower Med. Ctr.*,
 2024 WL 878100 (C.D. Cal. Feb. 29, 2024)................................................................. *passim*

*Beckington v. Am. Airlines, Inc.*,
 926 F.3d 595 (9th Cir. 2019) .....................................................................................11

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)...................................................................................................11

*BenefitElect, Inc. v. Strategic Benefit Sols. Corp.*,
 614 F. Supp. 3d 838 (D. Or. 2022) ............................................................................27

*Burtch v. Milberg Factors, Inc.*,
 662 F.3d 212 (3d Cir. 2011)......................................................................................20

*C.M. v. MarinHealth Medical Group, Inc.*,
 2024 WL 217841 (N.D. Cal. Jan. 19, 2024) .............................................................25

*Caro v. Weintraub*,
 618 F.3d 94 (2d Cir. 2010).........................................................................................18

*Castillo v. Seagate Technology, LLC*,
 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ..........................................................25

*Colquitt v. Mfrs & Traders Trust Co.*,
 2016 WL 1276095, at *4 (D. Or. Apr. 1, 2016) ...........................................................8

*DCIPA, LLC v. Lucile Slater Packard Children's Hosp.*,
 868 F. Supp. 2d 1042 (D. Or. 2011) ..........................................................................23

*Delta Sav. Bank v. United States*,
 265 F.3d 1017 (9th Cir. 2001) ...................................................................................28

*Depot, Inc. v. Caring for Montanans, Inc.*,
 915 F.3d 643 (9th Cir. 2019) .....................................................................................11

*Doe v. Meta Platforms, Inc.*,
  2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ..........................................................28

*Doe v. Oregon State Univ.*,
  614 F. Supp. 3d 847 (D. Or. 2022) .......................................................................23

*In re Facebook Internet Tracking Litig.*,
  140 F. Supp. 3d 922 (N.D. Cal. 2015) .............................................................19, 29

*In re Facebook Internet Tracking Litig.*,
  263 F. Supp. 3d 836 (N.D. Cal. 2017) .................................................................16

*In re Facebook Privacy Litig.*,
  791 F. Supp. 2d 705 (N.D. Cal. 2011) ............................................................17, 19

*In re Ford Tailgate Litig.*,
  2014 WL 1007066 (N.D. Cal. Mar. 12, 2014)......................................................26

*In re Google Cookie Placement Consumer Privacy Litigation*,
  806 F.3d 125 (3rd Cir. 2015) .....................................................................17, 18, 19

*In re Google, Inc. Privacy Pol'y Litig.*,
  58 F.Supp.3d 968 (N.D. Cal. 2014) .....................................................................22

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
  2018 WL 6802818 (C.D. Cal. Oct. 1, 2018)....................................................24, 25

*Heeger v. Facebook, Inc.*,
  509 F. Supp. 3d 1182 (N.D. Cal. 2020) ...............................................................26

*Hooper v. United States*,
  2013 WL 5530603 (D. Or. Sept. 25, 2013) ..........................................................20

*In re iPhone Application Litig.*,
  844 F.Supp.2d 1040 (N.D. Cal. 2012) ..................................................................22

*In re Jetblue Airways Corp. Privacy Litigation*,
  379 F. Supp. 2d 229, 327 (E.D. N.Y. 2005) .........................................................25

*Kurisu v. Svenhard's Swedish Bakery Supplemental Key Mgmt. Ret. Plan*,
  2022 WL 6733328 (D. Or. Oct. 11, 2022) ...........................................................11

*Kurowski, et al. v. Rush System for Health*,
  2023 WL 2349606 (N.D. Ill. Mar. 3, 2023)..........................................13, 17, 18

*Lovell v. P.F. Chang's China Bistro, Inc.*,
  2015 WL 4940371 (W.D. Wash. Mar. 27, 2015) ..................................................23

*Low v. LinkedIn Corp.*,
    900 F.Supp.2d 1010 (N.D. Cal. 2012) ...................................................................22

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016)................................................................16, 17, 19

*Pena v. GameStop, Inc.*,
    2023 WL 3170047 (S.D. Cal. Apr. 27, 2023)..........................................17

*Perez–Denison v. Kaiser Found. Health Plan of the Nw.*,
    868 F.Supp.2d 1065 (D. Or. 2012) ...................................................21

*Pruchnicki v. Envision Healthcare Corp.*,
    439 F. Supp. 3d 1226 (D. Nev. 2020)..............................................25

*REX-Real Estate Exch., Inc. v. Brown*,
    2021 WL 5855660 (D. Or. Dec. 9, 2021) ......................................15

*Seaton v. Mayberg*,
    610 F.3d 530 (9th Cir. 2010) ...............................................16, 28

*Smith v. Facebook*,
    262 F.Supp.3d 943 (N.D. Cal. 2017) ......................................14

*Stanford Health Care v. Blue Cross Shields of N.C., Inc.*,
    2022 WL 195847 (N.D. Cal. Jan. 21, 2022) ............................24

*Towles v. Dzurenda*,
    735 F. App'x 440 (9th Cir. 2018) .....................................15, 28

*Webb v. Smart Document Sols., LLC*,
    499 F.3d 1078 (9th Cir. 2007) ........................................15, 28

*Wilkerson v. Shinseki*,
    606 F.3d 1256 (10th Cir. 2010) .........................................15

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...........................22

*Yunker v. Pandora Media, Inc.*,
    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)........................24

*In re Zappos.com, Inc.*,
    108 F. Supp. 3d 949 (D. Nev. 2015) ................................27

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) .....................................19

**State Cases**

*Alsea Veneer, Inc. v. State,*
    318 Or. 33 (1993)................................................................................................26

*Cron v. Zimmer,*
    255 Or. App. 114 (2013)......................................................................................26

*Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Ass'n,*
    281 Or. 533 (1978)..............................................................................................27

*Eisenhower Med. Ctr. v. Super. Ct.,*
    226 Cal.App.4th 430 (2014) ..............................................................................14

*Fazzolari v. Portland School Dist. No. 1J,*
    303 Or. 1 (1987)..................................................................................................27

*Humphers v. First Interstate Bank of Oregon,*
    298 Or. 706 (1985)........................................................................................11, 21

*Kitzke v. Turnidge,*
    209 Ore. 563 (1957)............................................................................................23

*Magenis v. Fisher Broadcasting,*
    103 Or. App. 555 (1990)......................................................................................21

*Mauri v. Smith,*
    324 Or. 476 (1996)........................................................................................20, 21

*Mindful Insights, LLC v. VerifyValid, LLC,*
    301 Or. App. 256 (2019)......................................................................................22

*Newton/Boldt v. Newton,*
    192 Ore. App. 386, 392 (2004)............................................................................23

*Paul v. Providence Health Sys.-Oregon,*
    237 Or. App. 584 (2010)......................................................................................28

*Piazza ex rel. Piazza v. Kellim,*
    271 Or. App. 490 (2015)......................................................................................27

*Piazza v. Kellim,*
    360 Or. 58 (2016)................................................................................................27

*Staley v. Taylor,*
    165 Or. App. 256 (2000)......................................................................................22

*Stevens v. First Interstate Bank of California,*
    167 Or. App. 280 (2000)......................................................................................11

*Thompson v. St. Regis Paper Co.*,
   102 Wn.2d 219 (1984) ........................................................................................23

*Tupper v. Roan*,
   349 Or. 211 (2010) ...........................................................................................26

*Winters v. County of Clatsop*,
   210 Or. App. 417 (2007) ....................................................................................26

**Federal Statutes**

18 U.S.C. § 2510(8) .................................................................................................19

18 U.S.C. § 2511 *et seq.*............................................................................. *passim*

Confidentiality of Medical Information Act .................................................................20

Health Insurance Portability and Accountability Act ........................................... *passim*

Pub. L. 104–191, 110 Stat. 1936.............................................................................15

**State Statutes**

Or. Rev. Stat. Ann. §§ 192.553 to 192.581...........................................................12, 16

**Federal Rules**

Fed. R. Civ. P. 12(b)(6)......................................................................................8, 9, 11

## L.R. 7-1 CERTIFICATION

In compliance with L.R. 7-1, counsel for Defendant Legacy Health ("Legacy Health") certifies that the parties made a good faith effort, through a video conference, to resolve the disputes at issue in this motion and were unable to do so.

## MOTION

Legacy Health respectfully requests that the Court dismiss Plaintiff K.L.'s ("Plaintiff") Class Action Allegation Complaint ("Complaint") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

Plaintiff's Complaint is among numerous putative class action complaints that have been filed against healthcare providers nationwide regarding the ubiquitous practice of using third-party analytics technologies on their websites. Plaintiff claims that Legacy Health violated her privacy rights by allegedly installing third-party analytics tools called the Meta Pixel, Conversions API ("CAPI"), and Google Analytics (collectively, the "Pixels") on its public-facing website and patient portal.[1] Plaintiff claims in conclusory fashion that the Pixels generally caused her protected health information ("PHI") to be transmitted to Meta Platforms, Inc. ("Meta") and Alphabet, Inc. d/b/a Google ("Google").[2] Plaintiff further contends that the browsing information transmitted to

---

[1] Plaintiff alleges, on information and belief only, that "it is likely that the Pixel was at one time running within the MyHealth Patient Portal as well" (Compl. ¶ 105), but Plaintiff does not allege a single fact to support her information and belief. *See Colquitt v. Mfrs & Traders Trust Co.*, 2016 WL 1276095, at *4 (D. Or. Apr. 1, 2016) (where plaintiff alleged on information and belief that she was qualified for a loan modification, court concluded plaintiff failed to state a claim for violation of Or. Rev. Stat. § 659A.421(3) and § 3605 of the FHA because plaintiff had not pled sufficient facts for court to infer without speculating that she qualified for the loan modification).
[2] Plaintiff refers only to Meta Platforms, Inc. as "Facebook" in the Complaint, but because Facebook rebranded itself as Meta in 2021, Legacy Health will refer only to Meta here in the interest of accuracy.

Meta and Google as a result of the Pixels constitutes PHI and personally-identifiable patient information ("PII"). Plaintiff's Complaint should be dismissed for failure to state a claim under Rule 12(b)(6) because she has failed to allege facts sufficient to satisfy key elements of each of her six claims, as detailed below.

## II.    BACKGROUND

Legacy Health is a nonprofit healthcare organization that maintains the public website, https://www.legacyhealth.org. Compl. ¶¶ 3, 20. The Legacy Health public website provides a wide variety of information and conveniences to patients, families, employees, medical professionals, medical students, charitable donors, and the public at large. *See id.* ¶¶ 3, 21.

Plaintiff generally alleges that the code on Legacy Health's public website and patient portal permits certain information to be transmitted from a website user's web browser to Meta and/or Google through the Pixels. *Id.* ¶¶ 1, 5, 6, 43, 49, 54, 55, 66. Plaintiff makes the conclusory allegation that Legacy Health used the Pixels to "intercept, duplicate, and re-direct Plaintiff's and Class Members Private Information to [Meta] and Google" and to "unauthorized third parties." *Id.* ¶¶ 54, 65. Plaintiff provides examples of information that hypothetically could be disclosed to third parties, including Meta and Google, "when a [hypothetical] patient visits www.legacyhealth.org" and clicks on buttons or uses a search box. *Id.* ¶¶ 42-43, 68, 69-78. Plaintiff also freely uses the word "communications" throughout the Complaint, giving the impression that actual patient-doctor communications could theoretically be shared with Meta and/or Google. *Id.* Tellingly, however, Plaintiff does not go so far as to allege facts showing that the contents of any of *her* patient-doctor communications have ever been disclosed to Meta or Google.

As to herself, Plaintiff alleges that she is a Legacy Health patient, has used "Legacy Health for physical therapy," "saw a primary care physician at Legacy Health," and in 2022 "became a

patient of Legacy Health's burn unit to treat her burn wounds." *Id.* ¶¶ 93, 96-97. She alleges she "used Legacy Health's Website to find a primary care physician in 2015, to search for contact information for Legacy Health's burn specialists in 2022, to search for treatments related to burn wounds, and to retrieve healthcare records." *Id.* ¶ 97.

Plaintiff also alleges she used the patient portal "book appointments, communicate with physicians (Legacy Health practitioners sent her communications related to her treatment and physical therapy, including links to YouTube for physical therapy excises for her burn wounds), complete patient web forms, review healthcare records and prescriptions, and sign up for research." *Id.* ¶ 98.

Plaintiff claims that "[a]fter searching for burn specialists on Defendant's Website and receiving burn treatments from Defendant's specialists, Plaintiff observed advertisements on her Facebook account related to medical supplies for burns, vitamins to promote healing, exercises for burns, and exercises for fingers webs." *Id.* ¶ 111.

However, Plaintiff does not allege any of her own PHI or otherwise sensitive information was transmitted to Meta, Google, or any other third party. Instead, she summarily concludes that, "[p]ursuant to the systematic process described in this Complaint, Plaintiff's Private Information was thus disclosed to Facebook and Google, and this data included her PII, PHI, and related confidential information." *Id.* ¶¶ 102, 108. Plaintiff also includes a screenshot of her Facebook "activity detail" in an effort to show that activity was actually shared, but Plaintiff does not allege what actual "activity" was shared. *Id.* ¶ 103.

Based on these and other allegations, Plaintiff asserts six causes of action on behalf of herself and a putative nationwide class or, in the alternative, a putative Oregon class for: (1) breach of confidence; (2) violation of the Electronic Communications Privacy Act (18 U.S.C. § 2511(1)

*et seq.*) ("ECPA"); (3) invasion of privacy – intrusion upon seclusion; (4) breach of implied

contract; (5) unjust enrichment; and (6) negligence. *See generally* Complaint.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal if a complaint fails to state

a claim upon which relief can be granted. To survive a motion to dismiss, the complaint "must

contain sufficient 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a

plausible claim for relief.'" *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009)). "The plausibility standard is not akin to

a probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Kurisu v. Svenhard's Swedish Bakery Supplemental Key Mgmt. Ret. Plan*, 2022 WL

6733328, at \*2 (D. Or. Oct. 11, 2022) (citing *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984,

988 (9th Cir. 2017)) (internal quotations omitted). Thus, factual allegations must be enough to

raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007). Dismissal is appropriate when the complaint lacks a "cognizable legal theory" or

sufficient factual allegations to "support a cognizable legal theory." *Depot, Inc. v. Caring for

Montanans, Inc.*, 915 F.3d 643, 652-53 (9th Cir. 2019).

### VI.    ARGUMENTS AND AUTHORITIES

#### A.    Plaintiff Has Failed to State a Breach of Confidence Claim (Count I).

Breach of confidence under Oregon law[3] is based on the concept that "unauthorized and

unprivileged disclosure of confidential information ***obtained in a confidential relationship*** can

give rise to tort damages." *Humphers v. First Interstate Bank of Oregon*, 298 Or. 706, 717 (1985)

---

[3] This tort is also referred to as "breach of confidentiality" under Oregon law. *Stevens v. First
Interstate Bank of California*, 167 Or. App. 280, 286 (2000).

(emphasis added). This duty of "keeping secrets" may be "imposed as a condition of engaging in the professional practice of medicine . . ." *Id*. at 718 (citations omitted).

"A plaintiff asserting a breach of such a nonconsensual duty must identify its source and terms. If the tort claim asserts violation of a statute or regulation, the rule must validly apply to the facts, whether or not it actually is applied by those responsible for enforcement." *Id*. at 719. Plaintiff fails to plead facts sufficient to show that any of her alleged medical information was transmitted to Meta, Google, or any other third party. Her breach of confidence claim should therefore be dismissed without leave to amend.

Plaintiff claims that, by disclosing "communications exchanged on [Legacy Health's] Website" (*i.e.*, URL browsing data), Legacy Health violated "the implied covenant of trust and confidence that is inherent in the physician-patient relationship," and "HIPAA and its implementing regulations, as well as Oregon state law governing PHI, Or. Rev. Stat. Ann. §§ 192.553 to 192.581." Compl. ¶¶ 189-90. Plaintiff has otherwise failed to plead facts sufficient to show that any of her alleged *medical information* was actually transmitted to Meta, Google, or any other third party. All Plaintiff alleges about ***herself*** is that she has been a Legacy Health patient, has used Legacy Health's website to "find a primary care physician in 2015, to search for contact information for Legacy Health's burn specialists in 2022, to search for treatments related to burn wounds, and to retrieve healthcare records," and used the patient portal to "book appointments, communicate with physicians (Legacy Health practitioners sent her communications related to her treatment and physical therapy, including links to YouTube for physical therapy excises for her burn wounds), complete patient web forms, review healthcare records and prescriptions, and sign up for research." Compl. ¶¶ 97-98. Plaintiff otherwise describes a scenario of a hypothetical "patient" entering Legacy Health's public website and searching for a doctor, providing examples

of information that hypothetically **could** be disclosed to Meta and/or Google (*id.* ¶¶ 42-43, 68, 69, 78). None of those allegations even concern Plaintiff.

A recent, directly-on-point decision from the Central District of California, dismissing a breach of confidence claim under California law in a substantially similar complaint, is instructive:

> Plaintiffs fail to allege what, if any, medical information or medical records were transmitted or disclosed. Notably, Plaintiffs' Complaint is 90 pages long but includes less than four pages of vague allegations about Plaintiffs and experiences with Defendant. (See Complaint.) The Complaint is replete with conjectures and hypothetical scenarios and patients. (Id. ¶¶ 50-57; 74-96.) Plaintiffs fail to allege any specificity as to what medical information was allegedly disclosed or when it was disclosed. B.K. states she started using the Website over three years ago and started receiving unsolicited ads "shortly after" but provides no more information about the alleged disclosures.

*B.K. v. Eisenhower Med. Ctr.*, 2024 WL 878100, at *4 (C.D. Cal. Feb. 29, 2024); *id*. at *8 ("As discussed above, Plaintiffs fail to sufficiently allege disclosure. As a result, Plaintiffs' breach of confidence claim fails."). This Court should follow *B.K.*'s instructive holding.

In another virtually identical case, the Northern District of Illinois similarly concluded allegations regarding information that could hypothetically be disclosed were insufficient: "[Plaintiff] fails to allege the disclosure of any information related to the provision of treatment to her or other similarly situated Rush patients." *See Kurowski, et al. v. Rush System for Health*, 2023 WL 2349606, at *6 (N.D. Ill. Mar. 3, 2023). "[Plaintiff] has not alleged sufficient facts, however, to support an inference that Rush disclosed its patients' individually identifiable health information, at least as that term is defined by the statute. . . . Moreover, the hypotheticals provided by Kurowski appear to illustrate only what occurs when an individual—whether a patient or not—clicks on certain areas of Rush's public website." *Id*. at *5. Plaintiff's similarly insufficient allegations do not establish that any "medical information" was disclosed here.

Moreover, Plaintiff's alleged activities on Legacy Health's *public website* are insufficient to state a claim as a matter of law. *Smith v. Facebook*, 262 F.Supp.3d 943, 954-55 (N.D. Cal. 2017) (holding that disclosure to Facebook of browsing history on healthcare providers' public websites, as alleged here, did not disclose protected health information because "[t]hese pages contain general health information that is accessible to the public at large."). "Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes—information that unequivocally provides a window into an individual's personal medical history." *Id*.

In fact, the *Smith* court held that the type of information allegedly at issue here is *not* "medical information":

> The URLs at issue … point to pages containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information. … These pages contain general health information that is accessible to the public at large. The same pages are available to every computer, tablet, smartphone, or automated crawler that sends GET requests to these URLs. Nothing about the URLs, or the content of the pages located at those URLs, relates to the past, present, or future physical or mental health or condition of an individual.

*Id*. (dismissing similar claim under a California statute that prohibits disclosure of medical information). The Ninth Circuit affirmed the *Smith* court, similarly stating: "The data show only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status *or medical information*." 745 Appx. at *9 (unpublished) (emphasis added).

As for the patient portal-related allegations (*e.g.*, Compl. ¶¶ 5, 98), at most, Plaintiff has alleged the disclosure of the fact that she *may* have been a Legacy Health patient. But "the fact that he or she was a patient is not in itself medical information." *Eisenhower Med. Ctr. v. Super. Ct*., 226 Cal.App.4th 430, 436 (2014). Additionally, Plaintiff's allegation that her PHI was

transmitted to Google because "upon information and belief, it is likely that the Pixel was at one time running within the MyHealth Patient Portal" (Compl. ¶ 105) amounts to nothing more than a conclusory allegation insufficient to meet basic pleading standards. *REX-Real Estate Exch., Inc. v. Brown*, 2021 WL 5855660, at *2 (D. Or. Dec. 9, 2021) ("[A] complaint must state a plausible claim for relief and contain well-pleaded facts that permit the court to infer more than the mere possibility of misconduct[.]") (internal quotations and citation omitted). Plaintiff fails to plead facts showing what specific PHI was entered by Plaintiff, facts showing which of that alleged medical information actually was transmitted to Google and in what form, or facts showing how the data she entered into the patient portal could be matched to Plaintiff. As a result, no more than a "mere possibility" of purported misconduct is shown here, which is insufficient to meet basic pleading standards. *Id.*

To the extent Plaintiff's breach of confidence claim is predicated upon the Health Insurance Portability and Accountability Act ("HIPAA"), this federal statute is administrative in nature—it provides rules for hospital systems to conform to or face administrative penalties. *See generally* Pub. L. 104–191, 110 Stat. 1936. It does not permit a private cause of action and, therefore, cannot be found to establish any duty owed by Legacy Health to Plaintiff. *See Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1080 (9th Cir. 2007); *Towles v. Dzurenda*, 735 Fed. Appx. 440, 440 (9th Cir. 2018) (finding the district court properly dismissed claim alleging HIPAA violations because "there is no private right of action under the statute."); *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010) (same); *see also Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) (finding HIPAA does not create a private right of action for alleged disclosures of confidential medical information). Similarly, Oregon Revised Statutes section 192.571 expressly prohibits a private right of action against a health care provider. Accordingly, neither HIPAA nor

the Oregon statues Plaintiff has referenced can form the basis for Plaintiff's breach of confidence claim.

Because Plaintiff does not plead facts showing a disclosure of her actual medical information or medical records, the Court should dismiss the breach of confidence claim.

### B.    Plaintiff Fails to State a Claim Against Legacy Health for Violation of the ECPA (Count II).

A claim under the ECPA "requires a showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept[,] or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (internal quotation marks omitted). Plaintiff cannot satisfy at least the second, third, or fourth elements, and the ECPA claim should be dismissed as a matter of law, without leave to amend.

#### a.    *Plaintiff Fails to Allege Any Unlawful Interception*

Plaintiff cannot establish that any communication has been unlawfully "intercepted" by Legacy Health. The ECPA is a one-party consent statute. 18 U.S.C. § 2511(2)(d)) (The ECPA does not make it unlawful for someone to "intercept ... electronic communication where such person is a party to the communication."); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (discussing "one-party consent language in the Wiretap Act"). Stated differently, a party to a communication cannot unlawfully "intercept" a communication directed to it and cannot be held liable for "eavesdropping" upon itself. 18 U.S.C. § 2511(2)(d)); *In re Nickelodeon*, 827 F.3d at 275 (dismissing ECPA claim because defendant "was either a party to all communications with the Plaintiff's computers or was permitted to communicate with the Plaintiff's computers by Viacom, who was itself a party to all such communications."); *see also In re Google Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 142–43 (3rd Cir.

2015) (dismissing ECPA claim because tracking cookies placed by advertising providers made the advertiser the intended recipient of the electronic transmission); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (dismissing ECPA claim on same grounds).

The recent *B.K.* and *Kurowski* decisions make clear that users of a health care provider's website cannot state a claim under the ECPA because the health care provider was the intended recipient of any communications occurring via the website and therefore could not have intercepted that communication. *See B.K.*, 2024 WL 878100 at *5 ("the party exception to Plaintiffs' ECPA . . . claim[] exempts Defendants from liability"); *Kurowski*, 2023 WL 2349606 at *4 ("The Court concludes that Rush [(the healthcare provider)]—and not Facebook, Google, or Bidtellect—was the intended recipient of the allegedly intercepted communications here. Rush is therefore a party to those communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred."); *see also Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) (same ruling); *Pena v. GameStop, Inc.*, 2023 WL 3170047, at *3 (S.D. Cal. Apr. 27, 2023) (same ruling). Legacy Health is identically situated.

While there is a statutory exception under the ECPA where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State" (18 U.S.C. § 2511(2)(d)), this exception does not apply to the alleged interception itself; instead, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 145 (emphasis in original, quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)).

Plaintiff's ECPA claim against Legacy Health is tethered to the alleged transmission of browsing activities on the Legacy Health public website and Google Analytics allegedly being on the patient portal, and not any other independent tortious or criminal act. *See, e.g.*, Compl. ¶ 66 (alleging Legacy Health "intercepted" alleged communications "by installing and implementing both Facebook tools and Google Analytics"); *Id*. ¶ 104 ("Google Analytics is running within Defendant's MyHealth Patient Portal"). Although Plaintiff contends that her ECPA claim should survive under Section 2511(2)(d) (Compl. ¶ 229), the *Kurowski* court flatly rejected such a theory. *Kurowski*, 2023 WL 2349606 at *4 ("The 'exception' to the party exception for criminal or tortious intent does not apply."). This Court should do the same, especially since Plaintiff does not plead facts showing any tortious or criminal *use* of the alleged intercepted communications. *Id*.; *see also In re Google Cookie Placement*, 806 F.3d at 145 ("As the plaintiffs plead no tortious or criminal *use* of the acquired internet histories, § 2511(d) is not inapplicable on the basis of the criminal-tortious purpose exception.") (emphasis in original).

Both the case law and Plaintiff's allegations establish that Legacy Health was a party to (and intended recipient of) her alleged communications. Plaintiff therefore cannot establish the second element of her ECPA claim – an unlawful interception of a communication. The claim therefore should be dismissed as a matter of law and with prejudice, as further amendment would be futile. *In re Nickelodeon*, 827 F.3d at 275; *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 142-43; *In re Facebook Priv. Litig*, 791 F. Supp. 2d at 713.

### b.     *Plaintiff Fails to Allege any Plausible Interception of "Contents"*

Plaintiff's ECPA claim further fails because Plaintiff has not pled facts showing that the "contents" of any communications were disclosed to Meta, Google, or any other third party. Under the ECPA, "contents" of a communication are defined as "any information concerning the

substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "Content" information "refers to the intended message conveyed by the communication" and is therefore distinct from "record" information, which relates to "the characteristics of the message that is generated in the course of the communication," such as a name, address, or the identity of a subscriber or customer. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014).

In *Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930–31 (N.D. Cal. 2015), the court held that a URL sent to Meta by a user's browser does not qualify as "contents" of a "communication" under the ECPA because it is nothing more than "record information regarding the characteristics of the message that is generated in the course of the communication.'" *Id.* at 935 (quoting *In re Zynga*, 750 F.3d at 1106–07). The court emphasized that "[p]laintiff may never be able to state [an ECPA] claim, particularly since their arguments on this issue are so unpersuasive." *Id.* By definition, a URL does not convey the "meaning" of the communication with the host server; it simply identifies the location of the requested webpage on the Internet. In *In re Zynga,* the Ninth Circuit explained that even though a URL could disclose that a person viewed the "page of a gay support group," such URLs "function[] like an 'address,'" not "contents" of a communication. 750 F.3d at 1107.

Here, Plaintiff's Complaint fails to allege any facts showing that the substantive contents of her (or anyone's) alleged communications have ever been transmitted to Meta, Google, or any other third party. Plaintiff's conclusion that patients' "medical information," "health information," and "PHI" are transmitted to Meta and Google, which is unsupported by factual allegations (*see, e.g.*, Compl. ¶¶ 1, 9, 15, 189, 212, 224, 225, 229, 232, 265, 270), is insufficient as a matter of law. *See, e.g.*, *Iqbal*, 556 U.S. at 678 (mere conclusions are insufficient); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) (rejecting allegations that the defendant "regularly and

unlawfully shared highly confidential information" related to customers as conclusory in nature); *B.K.*, 2024 WL 878100 at *5 (dismissing claim under California Confidentiality of Medical Information Act because plaintiffs had failed "to allege what, if any, medical information or medical records were transmitted or disclosed" and that the plaintiffs' "vague allegations about [them] and their experiences with [the defendant]" and the complaint's "conjectures and hypothetical scenarios and patients" did not allege with "any specificity as to what medical information was allegedly disclosed or when it was disclosed.").

### C.    Plaintiff Has Failed to State an Invasion of Privacy Claim for Intrusion Upon Seclusion (Count III).

To prevail on an invasion of privacy claim under an intrusion upon seclusion theory, a plaintiff must prove: "(1) an intentional intrusion, physical or otherwise, (2) upon plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person." *Hooper v. United States*, 2013 WL 5530603, at *3 (D. Or. Sept. 25, 2013) (quoting *Mauri v. Smith*, 324 Or. 476, 483 (1996)).

The first element of an invasion of privacy claim on an intrusion upon seclusion theory is "an intentional intrusion, physical or otherwise." *Mauri*, 324 Or. at 483. An intrusion "'may be by some [ ] form of investigation or examination into his private concerns.'" *Perez–Denison v. Kaiser Found. Health Plan of the Nw*., 868 F.Supp.2d 1065, 1090 (D. Or. 2012) (quoting Restatement (Second) of Torts § 652B, cmt. b (1977)). An intrusion occurs only when the defendant acts without the plaintiff's permission, consent, or authorization and is intentional "if the actor either desires to cause an unauthorized intrusion or believes that an unauthorized intrusion is substantially certain to result from committing the invasive act in question." *Mauri*, 324 Or. at 484 (citations omitted). Plaintiff has not pled facts showing that, merely by installing routine analytics technologies on its public website, Legacy Health intentionally "desire[d] to cause an unauthorized

intrusion or believe[d] that an unauthorized intrusion is substantially certain to result from committing the invasive act in question." *Id.* (citations omitted).

In regard to the second element, the tort of invasion of privacy "protects the right of a plaintiff 'to be left alone.'" *Id.* (quoting *Humphers*, 298 Or. at 714 (internal citation omitted)). To establish this element, Plaintiff was required to show that the intrusion was upon Plaintiff's solitude, seclusion, or private affairs or concerns. *Mauri*, 324 Or. at 485. Plaintiff has not pled facts showing that any intrusion was upon Plaintiff's solitude, seclusion, private affairs, or concerns. *Id*. All Plaintiff has pled is that she visited Legacy Health's website and booked appointments. Compl. ¶¶ 97-98. Regardless, the alleged information at issue is URL browsing information, not medical communications or records. *Id*. ¶¶ 54, 65.

The final element of this claim is that the intrusion be "highly offensive to a reasonable person." *Mauri*, 324 Or. at 485; *see also* Restatement (Second) of Torts § 625B, cmt. d ("[t]here is [ ] no liability unless the interference with the plaintiff's seclusion is ... the result of conduct to which the reasonable man would strongly object"). When determining whether a defendant's conduct was highly offensive, courts consider factors including "the extent of the intrusion, the context, conduct and circumstances surrounding the intrusion, the defendant's motives, the setting into which the defendant intruded and the plaintiff's expectation of privacy." *Magenis v. Fisher Broadcasting*, 103 Or. App. 555, 562 (1990). There is no serious invasion of privacy alleged here.[4] Courts that have analyzed these issues have repeatedly held that similar data collection and disclosure practices to third parties constitute "routine commercial behavior" and are thus not a "highly offensive" or serious intrusion of privacy. *See Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010,

---

[4] Of course, an unauthorized disclosure of actual patient medical information or medical records would constitute a serious invasion of invasion, but Plaintiff has not come close to pleading such facts.

1025 (N.D. Cal. 2012) (LinkedIn's disclosure of users' browsing history to third parties was not highly offensive); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F.Supp.3d 968, 988 (N.D. Cal. 2014) (Google's collection and disclosure of users' browsing histories was not highly offensive); *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1060, 1063 (N.D. Cal. 2012) (disclosures of unique device identification number, personal data, and geolocation information without consent were not an egregious breach of social norms). Even disclosure of highly personal information such as social security numbers is not "highly offensive" under the relevant case law. *Low*, 900 F.Supp.2d at 1025. This Court should similarly hold that Plaintiff has not pled facts sufficient to establish a serious invasion of privacy.

Since Plaintiff fails to plead facts satisfying any of these elements, her privacy claim should be dismissed.

### D.    Plaintiff Fails to State a Breach of Implied Contract Claim (Count IV).

An implied-in-fact contract is inferred, in whole or in part, from the parties' conduct rather than from an express agreement; but in other respects, an implied-in-fact contract is no different in legal effect than an express contract. *Mindful Insights, LLC v. VerifyValid, LLC*, 301 Or. App. 256, 266 (2019), adh'd to on recons., 302 Or. App. 528 (2020); *Staley v. Taylor*, 165 Or. App. 256, 262 (2000) (citing Restatement (Second) of Contracts § 4 comment a (1979)). Plaintiff's claim for breach of implied contract fails.

Plaintiff fails to allege the existence of a valid contract, supported by any kind of mutual assent (offer and acceptance) to agreed terms. *See Staley*, 165 Or. App. at 262; *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (dismissing contract claim where plaintiff failed to "allege the specific provisions in the contract creating the obligation the defendant is said to have breached"); *Doe v. Oregon State Univ.*, 614 F. Supp. 3d 847, 861 (D. Or. 2022) (dismissing breach of contract claim for failure to allege sufficient facts to show a meeting of the minds of

mutual intent to contract). Plaintiff alleges that she entered into an unspecified contract for "services" rendered by Legacy Health and in turn she and the putative class members allegedly provided Legacy Health with "their Private Information and compensation for their medical care." *See* Compl. ¶¶ 250, 251, 253. The Court should not credit such vague and conclusory allegations which provide no specificity as to the terms of the contract, the services provided, or mutual assent.

Regardless, there is no indication that any contract included alleged promises to safeguard Plaintiff's data. *Lovell v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4940371, at *3 (W.D. Wash. Mar. 27, 2015) (dismissing breach of implied contract claim where implied contract could only relate to provision and payment of food, and not data security). To the extent Plaintiff seeks to rely on her *subjective* understanding there was a contract to safeguard her data, courts in the Ninth Circuit agree that such reliance is insufficient. *DCIPA, LLC v. Lucile Slater Packard Children's Hosp.*, 868 F. Supp. 2d 1042, 1053 (D. Or. 2011) (noting "the Oregon Supreme Court [has] expressly rejected … that the term 'meeting of the minds' required 'each of the two parties … to have in mind the same idea and intent before the jury could find that they effected a contract. Rather the court held that [t]he law of contracts is not concerned with the parties'' undisclosed intents and ideas. It gives heed only to their communications and overt acts. Thus, whether the parties entered into a contract does not depend on their uncommunicated subjective understanding; rather it depends on whether the parties manifest assent to the same express terms") (internal quotations and citations omitted) (quoting *Kitzke v. Turnidge*, 209 Ore. 563, 572–73 (1957); *Newton/Boldt v. Newton*, 192 Ore. App. 386, 392 (2004)); *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 224 (1984) (employee's "subjective understanding that he would be discharged only for cause . . . is insufficient to establish an implied contract to that effect"); *Stanford Health Care v. Blue Cross Shields of N.C., Inc.*, 2022 WL 195847, at *5 (N.D. Cal. Jan. 21, 2022) ("Mutual

assent 'is determined under an objective standard applied to the outward manifestations or expressions of the parties, [] and *not their unexpressed intentions or understandings*.'").

 Finally, the damages Plaintiff seeks are not recoverable in contract, as courts within the Ninth Circuit have routinely held that "damages based on the collection and dissemination of personal information are insufficient to state a claim for breach of contract." *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *13 (N.D. Cal. Mar. 26, 2013); *Low*, 900 F. Supp. 2d at 1028-29; *In re Facebook Litig.*, 791 F. Supp. 2d. at 717; *see also Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818, at *3 (C.D. Cal. Oct. 1, 2018) (explaining "[a] plaintiff must plead 'appreciable and actual damages' in relation to their breach of contract claim.") (citation omitted). At most, Plaintiff has alleged that she received targeted advertising, which is not an actual injury compensable under a contract theory.

As the *B.K.* court explained:

> A basic principle of contract law is that the "purpose of contract damages is to put a plaintiff in the same economic position he or she would have occupied had the contract been fully performed." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1029 (N.D. Cal. July 12, 2012). *Plaintiffs have not persuasively alleged that they "reasonably expect[ed] that they would be compensated for the 'value' of their personal information."* Id. (citing *In re Jetblue Airways Corp. Privacy Litigation*, 379 F. Supp. 2d 229, 327 (E.D. N.Y. 2005). *Plaintiffs have not alleged that they, or any other Users, have been foreclosed from opportunities to capitalize on the value of their personal information.*

*B.K.*, 2024 WL 878100 at *7 (emphasis added).

Plaintiff has also failed to alleged "tangible, out-of-pocket expenses," as required by courts within the Ninth Circuit. *See Castillo v. Seagate Technology, LLC*, 2016 WL 9280242, at *4 (N.D. Cal. Sept. 14, 2016); *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1233 (D. Nev. 2020), aff'd, 845 F. App'x 613 (9th Cir. 2021); *Hameed-Bolden*, 2018 WL 6802818, at *8. To the extent Plaintiff claims damages associated with the diminished value of her "Private Information" (Compl. ¶ 225), courts recently have concluded that "where the crux of this case

concerns Meta's [or other third parties'] receipt of 'individually identifiable health information,' that plaintiffs apparently do not want Meta or anyone other than their healthcare providers to have' it is incongruous for plaintiff[s] 'to then allege they intended to participate in this market, or otherwise to derive economic value from their PII.'" *C.M. v. MarinHealth Medical Group, Inc.*, 2024 WL 217841, at *2 (N.D. Cal. Jan. 19, 2024). And as to causation, Plaintiff alleges she received advertising after browsing Legacy Health's public website (Compl. ¶ 111), but because Plaintiff has failed to adequately allege *her* information was disclosed to third parties (as opposed to hypothetical website users'), Plaintiff has not plausibly shown the ads she received resulted from any alleged implied contract breach. Plaintiff's implied contract claim must be dismissed.

### E.    Plaintiff Fails to State an Unjust Enrichment Claim (Count V).

In order to prevail on an unjust enrichment claim, a plaintiff "must establish that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware that it had received a benefit; and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without paying for it." *Winters v. County of Clatsop*, 210 Or. App. 417, 421 (2007); *see also Cron v. Zimmer*, 255 Or. App. 114, 130 (2013) (identifying the same standard). Plaintiff's unjust enrichment claim fails for several reasons.

First, equitable relief, such as restitution based upon alleged unjust enrichment, is not available where Plaintiff's remedies at law would be adequate. *See Alsea Veneer, Inc. v. State*, 318 Or. 33, 36 (1993) ("Equitable relief does not lie if there is an adequate remedy at law."); *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) (dismissing certain equitable relief claims and noting that where an equitable relief claim "relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action"). Here, Plaintiff's other causes of action, if successful, provide adequate remedies at law, which bars Plaintiff's unjust enrichment claim.

Second, Plaintiff has failed to adequately allege she "retain[ed] a stake in the profits garnered from" Legacy Health's alleged collection, use, and disclosure of "valuable medical information." *See Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1191 (N.D. Cal. 2020) (dismissing claim for equitable relief where plaintiffs were unable to make any allegation that "they retain a stake in the profits garnered from" the collection of their IP addresses, "as to which they had no legally protected privacy interest"); *see also Tupper v. Roan*, 349 Or. 211, 223 (2010) ("[T]he plaintiff must show that property or a property interest that rightfully belongs to her was taken or obtained by someone else under circumstances that in some sense were wrongful or inequitable"). As discussed above, information regarding Plaintiff's browsing activities on Legacy Health's website does not constitute PHI, let alone "property" as required. Moreover, Plaintiff has failed to plead any facts to support her conclusory allegations of a purported "benefit . . . in the form of Private Information" to Legacy Health, "economic, intangible, and other benefits, including substantial monetary compensation" to Legacy Health. *See* Compl. ¶¶ 259-60. The *B.K.* court dismissed a virtually identical unjust enrichment claim, explaining:

> Plaintiffs do not allege any facts that would lead the Court to find that Defendant was unjustly enriched. Above, the Court finds that Plaintiffs fail to plead facts showing that Defendant disclosed Plaintiffs information—Plaintiffs fail to persuade the Court that it should come to a different conclusion as to [the unjust enrichment claim]. Without specific allegations about the underlying information that was allegedly disclosed, it is unclear to the Court how, if at all, Defendant was unjustly enriched. . . . the Complaint does not include facts specific to unjust enrichment of Defendant resulting from Plaintiffs' information.

*B.K.*, 2024 WL 878100 at *9. As such, Plaintiff has not pled facts showing that she is entitled to the return of "something which in equity and good conscience did not belong to the defendant." *BenefitElect, Inc. v. Strategic Benefit Sols. Corp.*, 614 F. Supp. 3d 838, 846 (D. Or. 2022) (citing to *Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Ass'n*, 281 Or. 533, 577 (1978)).

As for the healthcare services she received, Plaintiff fails to allege a single fact showing "how the price they paid for such [services] incorporated some particular sum that was ***understood by both parties*** to be allocated to" the protection of "valuable sensitive medical information." *See In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) (dismissing unjust enrichment claim for this reason) (emphasis added). And nowhere does Plaintiff allege that she did not receive the healthcare services she paid for. *See generally* Compl. Plaintiff received the benefit of her bargain, and the claim fails. *See BenefitElect, Inc.*, 614 F. Supp. 3d at 846 (dismissing plaintiffs' unjust enrichment claim because they had received the benefit of the bargain).

### F.    Plaintiff Fails to State a Negligence Claim (Count VI).

To recover in negligence, a plaintiff must show the defendant's conduct created a foreseeable risk of harm and caused injury to the plaintiff. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 17 (1987). Thus, Plaintiff was required to plausibly allege "(1) that [the] defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that [the] defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of [the] plaintiff's harm, and (5) that [the] plaintiff was within the class of persons and [the] plaintiff's injury was within the general type of potential incidents and injuries that made [the] defendant's conduct negligent." *Piazza ex rel. Piazza v. Kellim*, 271 Or. App. 490, 516 (2015), aff'd sub nom. *Piazza v. Kellim*, 360 Or. 58 (2016). Because Plaintiff fails to establish duty, breach, and cognizable damages, the Court should dismiss the negligence claim.

First, there is no recognized duty under Oregon law for safeguarding online browsing information. To the extent Plaintiff's negligence claim is predicated upon HIPAA, HIPAA does not permit a private cause of action and cannot be found to establish any duty owed by Legacy Health to Plaintiff. *See Webb*, 499 F.3d at 1080; *Towles*, 735 F. App'x at 440 (finding the district

court properly dismissed claim alleging HIPAA violations because "there is no private right of action under the statute."); *Seaton*, 610 F.3d at 533 (same); *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443 at *13 (N.D. Cal. Sept. 7, 2023) (dismissing negligence *per se* claim based on duty created by HIPAA); *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2001). Accordingly, HIPAA cannot form the basis for any duty owed by Legacy Health toward Plaintiff. No other cognizable duty is available here. *See also Paul v. Providence Health Sys.-Oregon*, 237 Or. App. 584, 592 (2010), aff'd on other grounds, 351 Or. 587 (2012) (dismissing negligence claim against healthcare provider in data breach matter where "plaintiffs here have failed to identify any such heightened duty of care to protect against economic harm arising out of the relationship between themselves as patients and defendant as a health care provider . . .").

Second, even if Plaintiff had established any cognizable duty, she has failed to establish breach. Plaintiff has not pled facts showing that anyone's (let alone Plaintiff's) medical records or that information regarding a single diagnosis, treatment, or medication has been disclosed to any third party. Plaintiff thus has not pled facts showing that "defendant's conduct caused a foreseeable risk of harm," that "the risk is to an interest of a kind that the law protects against negligent invasion," and that "defendant's conduct was unreasonable in light of the risk." *Kellim*, 271 Or. App. at 516; *see also B.K.*, 2024 WL 878100 at *8 (dismissing virtually identical negligence claim).

Plaintiff also fails to allege any cognizable damages because she does not plead facts showing that she lost the opportunity to sell her information or that the value of her information was somehow diminished after it was allegedly collected by Meta or Google. *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 930-31.

DEFENDANT LEGACY HEALTH'S MOTION TO DISMISS - 28
CASE NO.: 3:23-CV-01886-SI

## V.     CONCLUSION

For the foregoing reasons, Legacy Health respectfully requests that the Court grant its

motion to dismiss.

DATED:          March 22, 2024.

Respectfully submitted,

*/s/ Alex Vitruk*
Curt Roy Hineline, OSB No. 913153
Alexander Vitruk, *pro hac vice*
BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
(206) 332-1101
Email: chineline@bakerlaw.com
          avitruk@bakerlaw.com

*Attorneys for Defendant Legacy Health*

This brief complies with the applicable word-count limitation under LR 7-2(b) because it
contains 7233 words, including headings, footnotes, and quotations, but excluding the caption,
table of contents, table of cases and authorities, signature block, exhibits, and any certificates of
counsel.

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| **STOLL STOLL BERNE LOKTING & SHLACTER P.C.**<br><br>Timothy S. DeJong, OSB No. 940662<br>209 SW Oak Street, Suite 500<br>Portland, OR 97204<br>Tel: (503) 227-1600<br>Fax: (503) 227-6840<br>Email: tdejong@stollberne.com<br><br>-AND- | ☒ *Via E-Service*<br>☒ *Via Email*<br>☐ *Via Hand-Delivery*<br>☐ *Via Overnight Courier*<br>☐ *Via U.S. Mail* |
| Gary M. Klinger*<br>**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**<br>227 W. Monroe Street, Suite 2100<br>Chicago, IL 60606<br>Tel: (866) 252-0878<br>Email: gklinger@milberg.com | ☐ *Via E-Service*<br>☒ *Via Email*<br>☐ *Via Hand-Delivery*<br>☐ *Via Overnight Courier*<br>☐ *Via U.S. Mail* |
| Glen L. Abramson*<br>Alexandra M. Honeycutt<br>**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**<br>800 S. Gay Street, Suite 1100<br>Knoxville, TN 37929<br>Tel: (866) 252-0878<br>Email: gabramson@milberg.com<br>ahoneycutt@milberg.com | ☐ *Via E-Service*<br>☒ *Via Email*<br>☐ *Via Hand-Delivery*<br>☐ *Via Overnight Courier*<br>☐ *Via U.S. Mail* |
| Bryan L. Bleichner*<br>Philip J. Krzeski*<br>**CHESTNUT CAMBRONNE PA**<br>100 Washington Avenue South, Suite 1700<br>Minneapolis, MN 55401<br>Tel: (612) 339-7300<br>Fax: (612) 336-2940<br>Email:bbleichner@chestnutcambronne.com<br>pkrzeski@chestnutcambronne.com | ☐ *Via E-Service*<br>☒ *Via Email*<br>☐ *Via Hand-Delivery*<br>☐ *Via Overnight Courier*<br>☐ *Via U.S. Mail* |
| Terence R. Coates*<br>Dylan J. Gould* | |

| | |
|---|---|
| **MARKOVITS, STOCK & DeMARCO, LLC**<br>119 E. Court Street, Suite 530<br>Cincinnati, OH 45202<br>Tel: (513) 651-3700<br>Fax: (513) 665-0219<br>Email: tcoates@msdlegal.com<br>dgould@msdlegal.com | ☐ *Via E-Service*<br>☒ *Via Email*<br>☐ *Via Hand-Delivery*<br>☐ *Via Overnight Courier*<br>☐ *Via U.S. Mail* |
| Joseph M. Lyon*<br>**THE LYON FIRM**<br>2754 Erie Avenue<br>Cincinnati, OH 45208<br>Tel: (513) 381-2333<br>Fax: (513) 766-9011<br>Email: jlyon@thelyonfirm.com<br><br>*Attorneys for Plaintiff*<br>* *pro hac vice* | ☐ *Via E-Service*<br>☒ *Via Email*<br>☐ *Via Hand-Delivery*<br>☐ *Via Overnight Courier*<br>☐ *Via U.S. Mail* |

DATED:        March 22, 2024.



_____
        /s/ Pandy Savage McVay
Pandy Savage McVay
Legal Assistant